David W. **GALVIN** and Alice I. Galvin, Plaintiffs,

v.

**FIRST NATIONAL MONETARY CORPORATION, Defendant.**

**No. 84 CV 969.**

United States District Court, E.D. New York.

Oct. 4, 1985.

Stanford A. Schwartz, East Meadow, N.Y., Andrew J. Conner, James E. Blackwood, Erie, Pa., for plaintiffs.

Simon, Deitch, Tucker, Weisman, Friedman & Trogan, Southfield, Mich. by Martin C. Weisman and Kenneth F. Silver, Walter, Conston & Schurtman, New York City by David B. Wolf, for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an action for damages brought by the Galvins on behalf of themselves and all other New York residents who, at any time between May 1981 and July 1982, invested through agents or representatives of defendant First National Monetary Corporation ("FNMC") in "cash forward" contracts offered by FNMC. Plaintiffs allege violations of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6b and 6h, (Count I); violations of 7 U.S.C. § 6h and Reg. § 30.-03, (Count II); common law fraud (Count III); and violations of the Uniform Commercial Code ("UCC") 2–302 (Count IV). Defendant moves to dismiss Counts I, II and IV for failure to state a claim. Fed.R. Civ.P. 12(b)(6). For the reasons set forth below, defendant's motion is granted in part, and denied in part.

*Facts*

Defendant FNMC is a Michigan corporation engaged in the trading of gold, silver and other precious metals pursuant to standardized contracts demonimated as "cash forward" contracts. At all times relevant to this action, FNMC was a registered commodity trading advisor with the United States Commodity Futures Trading Commission ("CFTC").

The Galvins purchased precious metals through FNMC's "cash forward" program, and ultimately lost in excess of $40,000. In this action, they allege that (1) the FNMC "cash forward" program constitutes an illegal futures contract since it was not traded on a designated contract market or through contract market makers as required by the CEA, 7 U.S.C. §§ 6 and 6h (Count I); (2) FNMC's conduct in soliciting such accounts and in dealing with plaintiffs (and other class members) constituted fraudulent, misleading and deceitful conduct within the meaning of the CEA and CFTC's anti-fraud regulations (Count II);

(3) FNMC committed common law fraud by using high-pressure and misleading sales techniques to lure persons unfamiliar with the precious metals market to trade in such contracts under a contractual agreement that was "unfair and burdensome" to these consumers (Count III); and (4) the contracts were so one-sided, unfair, misleading and burdensome as to be unconscionable and unenforceable, thus entitling plaintiffs to rescissionary relief under UCC 2–302 (Count IV).

Defendant FNMC moves to dismiss Counts I, II and IV, claiming that (1) its "cash forward" program is a leverage transaction, rather than a futures contract, and thus, is not subject to the regulations regarding futures; (2) even if this Court were to determine that the "cash forward" program is not a leverage transaction, no private right of action exists under 7 U.S.C. § 6h and Reg. § 30.02; and (3) while U.C.C. § 2–302 creates a defense, it does not give a right of action. In the alternative, defendant urges that this action be stayed pending a final decision on the leverage issue by the CFTC.

## Discussion

### 1. Leverage v. Futures Contracts

The problem of differentiating between a futures contract and a leverage agreement has plagued both Congress and the CFTC for years. *See generally Breyer v. First National Monetary Corp.*, 548 F.Supp. 955, 963–64 (D.N.J.1982). Indeed, Philip McB. Johnson, Chairman of the Commodity Futures Trading Commission, (the administrative body to which Congress has delegated the task of resolving the problem) has noted that "differing opinions exist over the nature of leverage contracts and their distinction, if any, from futures contracts even though they are off-exchange instruments." *See* H.R.Rep. No. 565, 97th Cong., 2d Sess., *reprinted in* [1982] U.S. Code Cong. & Ad.News 3871, 3957, 3963 ("H.P.Rep. No. 565"). Nonetheless, this Court is called upon to decide whether the FNMC "cash forward" contract is a lever-

age contract that may be legally traded off a designated contract market, or a futures contract that may not.

■ A futures contract is, in its seminal sense, a contract of sale of a commodity for future delivery. One Court describes a futures contract as follows:

Among the distinguishing characteristics of a futures contract is its standardized form as to quantity and other terms. The standardization, set by the designated contract market, facilitates trading of the contracts. Although many of the traders never intend to take delivery of the underlying commodity, the contracts provide for uniform delivery points and delivery dates. Trading must take place on a licensed exchange designated by the CFTC as a "contract market" and prices are established by the competitive trading on the exchange.

*Breyer v. First National Monetary Corp., supra,* 548 F.Supp. at 963.

A leverage contract, on the other hand, is defined by Congress, albeit circuitously, as

A standardized contract *commonly known to the trade* as a margin account, margin contract, leverage account, or leverage contract, or ... any contract, account, arrangement, scheme, or device that the Commission determines serves the same function or functions as such a standardized contract, or is marketed or managed in substantially the same manner as such a standardized contract.

7 U.S.C. § 23(a) (emphasis added). Thus, the distinction between a leverage contract and a futures contract hinges, in large part, upon trade usage. *See Breyer v. First National Monetary Corp., supra,* 548 F.Supp. at 964.

■ On April 29, 1983, the CFTC found that the FNMC "cash forward" contract is, in fact, a futures contract subject to the regulations of the CEA. *In the Matter of First National Monetary Corporation,* CFTC No. 79–56, Comm.Fut.L.Rep. (CCH) ¶ 21,707, [1983]. Defendant is presently

pursuing an administrative appeal of that decision.

Notwithstanding the CFTC's decision, however, defendant urges this Court to hold as a matter of law that the cash forward contract is a leverage contract. Defendant contends that this Court has the benefit of affidavits from members of the trade which were not made available to the CFTC.

Having considered the affidavits and memoranda submitted by each party, however, I find that there are material issues of fact which must be resolved at trial, not the least of which is the credibility of the affiants. In short, I find that the issues of fact and law involved are simply too complex to be determined on the record presently before the Court. Accordingly, the motion for summary judgment is denied.[1]

### 2. *Private Cause of Action*

■ Alternatively, defendant argues that, even if its contract with plaintiffs is not a leverage agreement, counts I and II must still be dismissed because no implied private right of action exists for violations of 7 U.S.C. §§ 6h and 17 C.F.R. § 30.02 (the anti-fraud provisions).

In *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran* ("*Curran*"), 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), the Supreme Court held that implied actions are available to plaintiffs alleging violations of certain provisions of the CEA. *Id.* at 388, 102 S.Ct. at 1884. *Curran*, however, did not deal with the newly amended § 6h of the CEA (upon which plaintiffs rely). Accordingly, this Court must conduct an independent inquiry into the validity of a private right of action under that section. *See Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

Perhaps the most relevant inquiry in this regard is whether Congress intended such a remedy. *Curran, supra,* 456 U.S. at 378, 102 S.Ct. at 1839.

Section 4h of the CEA provides that:

It shall be unlawful for any person falsely to represent such person to be a member of a contract market ... or to be a registrant ..., in soliciting or handling any order or contract for the purchase or sale of any commodity in interstate commerce or for future delivery, or falsely to represent in connection with the handling of any such order or contract that the same is to be or has been executed on, or by or through a member of, any contract market.

7 U.S.C. § 6h.

Unhappily, the legislative history regarding § 6(h) is sparse. Nonetheless, after examining the congressional reports submitted with the 1982 amendments to the CEA, this Court discerns a decided trend in favor of private causes of action as a secondary enforcement mechanism under the Act. *See, e.g.,* H.R.Rep. No. 565, *supra,* [1982] U.S.Code Cong. & Ad.News at 3965. The following comment is illustrative: "the right of an aggrieved person to sue a violator of the Act is critical to protecting the public and fundamental to maintaining the credibility of the futures market." *Id.* at 3905–06.

In short, I cannot say as a matter of law that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (footnote omitted). Accordingly, the motion to dismiss Counts I and II is denied.

### 3. *Unconscionability*

■ In Count IV of the complaint, plaintiff demands rescission of the cash forward contract, together with a restoration of all commissions, fees and charges imposed by FNMC in connection with the contract, on

---

1. Defendant submitted matters outside the complaint, *i.e.,* three affidavits from members of the trade, to support its contention that the cash forward contract is a leverage agreement. Accordingly, the parties agree that as to that issue, the motion shall be treated as one for summary judgment and disposed of as provided in Fed.R. Civ.P. 56.

158

the ground that the contract was unconscionable and thus, unenforceable as a matter of law. Defendant moves to dismiss this claim, arguing that the doctrine of unconscionability is in the nature of an affirmative defense, and does not give rise to a cause of action. I agree.

The New York courts consistently hold that "UCC § 2–302 merely gives the court the right of refusal to enforce an unconscionable contract. It makes no provision for damages, and none may be recovered thereunder." *Vom Lehn v. Astor Art Galleries, Ltd.*, 86 Misc.2d 1, 380 N.Y.S.2d 532, 541 (Suffolk County 1976). *See Pearson v. National Budgeting Systems, Inc.*, 31 A.D.2d 792, 297 N.Y.S.2d 59, 60 (First Dep't 1969). Moreover, the same result is reached under traditional common law unconscionability theory. *Cf. Cowin Equipment Co., Inc. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir.1984).

Accordingly, defendant's motion to dismiss Count IV of the complaint is granted.

*Request to Stay Proceedings*

As previously mentioned, defendant has filed an administrative appeal from the CFTC's April 29, 1983 determination that the FNMC cash forward agreement is a futures contract. Accordingly, defendant requests that this action be stayed until the Commission has issued a final ruling. Plaintiffs urge this Court to deny defendant's request for a stay, however, since the common law fraud claim asserted in their complaint is unaffected by the outcome of the administrative proceedings, and since such proceedings may continue for an indefinite amount of time.

The record is unclear as to the current status of the CFTC proceeding. Accordingly, to enable the Court to assess the propriety of staying this action, defendant is hereby directed to advise the court within thirty days of this Order regarding the status of the related CFTC proceedings and the date by which a decision is anticipated.

SO ORDERED.